UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| RONALD SATISH EMRIT, | ) | |
| Plaintiff | ) ) ) | |
| v. | ) ) | No. 1:17-cv-00402-GZS |
| MATTHEW DUNLAP and MAINE DEMOCRATIC PARTY, | ) ) ) | |
| Defendants | ) | |

### ORDER GRANTING LEAVE TO PROCEED IN FORMA PAUPERIS AND RECOMMENDED DISMISSAL OF THE CASE[1]

The plaintiff has filed suit alleging that Maine Secretary of State Matthew Dunlap, in his capacity as Secretary of State,[2] and the Maine Democratic Party violated various constitutional and statutory rights by refusing to place him on the primary and general election ballots for the 2016 presidential election. He seeks damages for the alleged violations in 2016 and injunctive relief in the form of a mandate that he be placed on Maine's primary and general election ballots in the 2020 presidential election. He requests permission to proceed without paying fees or costs

---

[1] On March 12, 2018, the plaintiff filed a notice of appeal to the First Circuit to "reverse and remand the holding of this case[,]" expressing concern that, as a result of problems receiving his mail, he had missed any report and recommendation or court order issued in this case. *See* ECF No. 8. His appeal is premature. As of the date of its filing, this court had issued no order or decision from which he could appeal. His appeal, therefore, is not a bar to this court's continuing exercise of jurisdiction over the case. *See, e.g., Bensalem Twp. v. Int'l Surplus Lines Ins. Co.*, 38 F.3d 1303, 1314 (3d Cir. 1994) ("[A] *premature* notice of appeal does not divest the district court of jurisdiction.") (citation and internal quotation marks omitted) (emphasis in original).

[2] The court will deem the suit against Dunlap a suit against him in his official capacity as the Secretary of the State of Maine. *See, e.g., Emrit v. Gale*, 4:17CV3133, 2018 WL 618414, at *2 (D. Neb. Jan. 29, 2018) ("Where a plaintiff fails to expressly and unambiguously state that a public official is sued in his individual capacity, the court assumes that the defendant is sued only in his or her official capacity.") (citation and internal punctuation omitted).

1

associated with this lawsuit. I grant the plaintiff's request for leave to proceed *in forma pauperis* but recommend that the court dismiss this action pursuant to 28 U.S.C. § 1915(e)(2)(B).

## I. Application To Proceed *in Forma Pauperis*

*In forma pauperis* status is available under 28 U.S.C. § 1915(a)(1). In his motion to proceed *in forma pauperis*, the plaintiff declares under penalty of perjury that he is unemployed and that his only monthly income is $789 in disability payments. *See* Application to Proceed in District Court Without Prepaying Fees or Costs ("Application") (ECF No. 3) ¶¶ 1-2. The plaintiff states that he has $683 in a Chase Bank checking account but is overdrawn by a total of $1,500 in two checking accounts held at other banks. *See id.* ¶ 4. He lists no real or tangible assets but indicates that he is owed a total of $2,200 by three individuals. *See id.* ¶¶ 5-6. Finally, the plaintiff claims to have monthly expenses totaling $1,230.[3] *See id.* ¶ 8. These financial circumstances entitle him to proceed *in forma pauperis*.

## II. Section 1915(e)(2)(B) Review

### A. Applicable Legal Standard

The federal *in forma pauperis* statute, 28 U.S.C. § 1915, is designed to ensure meaningful access to the federal courts for those persons unable to pay the costs of bringing an action. When a party is proceeding *in forma pauperis*, however, "the court shall dismiss the case at any time if the court determines[,]" *inter alia*, that the action is "frivolous or malicious" or "fails to state a claim on which relief may be granted" or "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

---

[3] The plaintiff lists expenses for food, clothing, laundry and dry cleaning, medical and dental care, transportation, recreation, health insurance, and "[r]egular expenses for operation of business, profession, or farm[.]" *See* Application ¶ 8. That last field of expenses requires that an applicant attach a detailed statement. *See id.* The plaintiff failed to do so. Nevertheless, even excluding that expense, the plaintiff's expenses well exceed his income.

"Dismissals [under § 1915] are often made *sua sponte* prior to the issuance of process, so as to spare prospective defendants the inconvenience and expense of answering such complaints." *Neitzke v. Williams*, 490 U.S. 319, 324 (1989); *see also Mallard v. U.S. Dist. Court S.D. Iowa*, 490 U.S. 296, 307-08 (1989) ("Section 1915(d), for example, authorizes courts to dismiss a 'frivolous or malicious' action, but there is little doubt they would have power to do so even in the absence of this statutory provision.").[4]

When considering whether a complaint states a claim for which relief may be granted, a court must assume the truth of all well-plead facts and give the plaintiff the benefit of all reasonable inferences therefrom. *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011). A complaint fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

Although a *pro se* plaintiff's complaint is subject to "less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520 (1972), this is "not to say that pro se plaintiffs are not required to plead basic facts sufficient to state a claim[,]" *Ferranti v. Moran*, 618 F.2d 888, 890 (1st Cir. 1980). To allege a civil action in federal court, it is not enough for a plaintiff merely to allege that a defendant acted unlawfully; a plaintiff must affirmatively allege facts that identify the manner in which the defendant subjected the plaintiff to a harm for which the law affords a remedy. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As noted, the statute that provides for waiver of the filing fee also requires the court to determine whether the plaintiff's case may proceed. In other words, the plaintiff's complaint must be dismissed if the court finds it to be frivolous or malicious, seeks monetary relief from a defendant who is immune from such

---

[4] Section 1915(d) was subsequently renumbered to section 1915(e).

relief, or fails to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2)(B). In this regard, a *pro se* plaintiff's complaint must be read liberally. *Donovan v. Maine*, 276 F.3d 87, 94 (1st Cir. 2002).

### B. Factual Background

The operative complaint in this action, the plaintiff's Second Amended Complaint ("Complaint") (ECF No. 7), begins with 38 paragraphs of content under the caption "Nature of the Case." *See* Complaint ¶¶ 1-38. I cannot discern any relationship between the first 34 paragraphs, which describe, *inter alia*, FISA warrants and the plaintiff's travel to Cuba, and the causes of action that the plaintiff later alleges in his complaint. *See id*. ¶¶ 1-34. However, paragraphs 35 to 38 state as follows:

> 35.) [T]he plaintiff alleges that the two defendants . . . have violated his [e]qual protection [r]ights inherent from the Fifth and Fourteenth Amendments to the United States Constitution.
>
> 36.) The plaintiff alleges that the two defendants have violated his substantive and procedural due process rights also inherent from the Fifth and Fourteenth Amendments to the U.S. Constitution.
>
> 37.) As a third count, the plaintiff alleges that both of the defendants have violated Title VII of the Civil Rights Act of 1964 which would allegedly protect the plaintiff's implied fundamental right to run for president of the United States as an American citizen under the principles of both jus soli (citizen by birth on soil) and jus sanguinis (and citizen by blood).
>
> 38.) Moreover, the plaintiff alleges that neither of the two defendants should be protected by the Eleventh Amendment doctrine of sovereign immunity and that it is unconstitutional to require that the two defendants waive their sovereign immunity as it is reasonable to assert that no governmental defendant would ever waive its right to sovereign immunity because no governmental agency (on the federal, state, or local level) would ever agree to be sued in its own jurisdiction.

*Id*. ¶¶ 35-38.

The Complaint also includes a section titled "Statement of Facts," spanning 26 paragraphs. *See id.* ¶¶ 49-75. Again, paragraphs 49 to 68 have no apparent bearing on the case, discussing,

*inter alia*, the plaintiff's law school curriculum, international travel, and psychic abilities. *See id.*

However, paragraphs 69 to 75 state as follows:

> 69.) . . . [T]he plaintiff was a Democratic candidate for president of the United States in the 2016 general election. As such, he ran alongside Bernie Sanders, Hillary Clinton, and President [T]rump.
>
> 70.) The plaintiff was only placed on an official ballot in Palm Beach County, FL whereas he was not placed on a ballot in any other jurisdiction in the country.
>
> 71.) The plaintiff was told by several secretaries of state that in order to get placed on the ballot in the primary or general election, he would have had to get a minimum number of petitions signed from the constituents of each jurisdiction in which he wanted to run for president in the general election (as an independent candidate).
>
> 72.) In the 2016 presidential election, the plaintiff's candidate ID number was P60005535 (registered with FEC Form 2 with the Federal Elections Committee (FEC) at 999 E Street, NW Washington, DC 20463)[.]
>
> 73.) With regards to the Political Action Committee (PAC) or Separate Segregated Fund (SSF) representing the plaintiff, the principal campaign committee identification number was C00569897.
>
> 74.) Accordingly, the plaintiff was not represented by any "Super PAC" and was not funded by any philanthropists or lobbyists such as the infamous Koch Brothers which are allowed to donate as much as they want to any PAC or Super PAC according to the stare decisis/persuasive precedent of *Citizens United v. FEC*, 558 U.S. 310 (2010).
>
> 75.) Upon filling out FEC Form 1, it can be shown that the plaintiff as a candidate, nor his PAC/SSF had any contributions from anybody as he never was able to receive donations or funding from any person, entity, corporation, or non-profit entity.

*Id*. ¶¶ 69-75.

Finally, the Complaint sets forth three counts. *See id.* ¶¶ 76-89. Count One, titled "Violation of the Equal Protection Clause Inherent from the Fifth and Fourteenth Amendments to the U.S. Constitution[,]" reads as follows:

> 76.) Because of the fact that the plaintiff is African-American, it can be stated with substantial certainty that he is a member of a suspect classification of discrete

and insular minorities which have suffered invidious discrimination within the context of American jurisprudence.

77.) As such, any federal, state, or local laws/regulations (restricting the plaintiff from being on the ballot in this particular state for the primary and general election) must pass a strict scrutiny test as opposed to an intermediate scrutiny test or rational basis test.

78.) More specifically, the burden of proof and persuasion rests squarely with the two defendants to show by a preponderance of the evidence that any federal, state, or local laws (restricting the plaintiff from being placed on the primary and general election ballot in this state) applying to the plaintiff must be "narrowly-tailored to a compelling government objective[]" (rather than the lower level of being "rationally-related to a legitimate government objective in which the burden of proof and persuasion rests squarely with the plaintiff).

79.) The plaintiff argues in "good faith" that there is no compelling government objective in requiring him to obtain a minimum number of petitions/signatures such that he can be placed on the ballot in this state for the primary and general elections in 2016 (already passed) and again in 2020 (in the future of course) as an independent candidate or Democratic candidate.

80.) As such, both of the defendants have violated the plaintiff's equal protection rights by excluding him from the primary and general election ballots in 2016 (e.g. the statute of limitations has not yet passed) and also in the future in 2020 (when the plaintiff plans to run again for president of the United States).

*Id.* ¶¶ 76-80.

Count Two, titled "Violation of the Due Process Clause Inherent from the Fifth and Fourteenth Amendments to the U.S. Constitution[,]" is identically worded except that it alleges violations of the plaintiff's substantive and procedural due process rights rather than his equal protection rights, *see id*. ¶¶ 81-85, and adds:

86.) At the very least, the plaintiff should have been given a notice and a hearing with regards to his not being placed on the 2016 ballots in the state and he should be given a notice and a hearing in the future if he will be excluded from the ballots in 2020. The three types of notice are constructive notice, actual notice, and inquiry notice.

*Id.* ¶ 86.

Count Three, titled "Violation of Title VII of the Civil Rights Act of 1964[,]" reads as follows:

> 87.) According to the website operated by the American Association of University Women (AAUW), "Title VII of the Civil Rights Act of 1964 is a federal law that prohibits employers from discriminating against employees on the basis of sex, race, color, national origin, and religion. It generally applies to employers with 15 or more employees, including federal, state, and local governments. Title VII also applies to private and public colleges and universities, employment agencies, and labor organizations."
>
> 88.) The plaintiff argues that both of the defendants have violated Title VII of the Civil Rights Act of 1964 by failing to place him on the 2016 ballot for the primary and general presidential election. This violation of Title VII of the Civil Rights Act of 1964 is particularly egregious given that the plaintiff is a disabled African-American male who has decided to run for president of the United States (as he passes the qualifications of being a U.S. citizen over the age of 35 years old).
>
> 89.) Presumably, these defendants will have committed a violation of Title VII of the Civil Rights Act of 1964 in the future (in 2020) if they continue to exclude the plaintiff from being on the ballots in this state in the primary and general presidential election.

*Id.* ¶¶ 87-89.

The plaintiff requests relief in the form of a judgment in the sum of $250,000 and a court order mandating that he be placed on the primary and general election ballots in Maine in the 2020 presidential election. *See id*. at 22-23.

Thus, the Complaint alleges that the defendants discriminated against the plaintiff based on his race and disability, in violation of his constitutional and statutory rights, by requiring that he present a certain number of constituent signatures to qualify to be listed as a U.S. presidential candidate on Maine's primary and general election ballots in 2016. For the reasons that follow, I conclude that, even read liberally, the Complaint fails to state a claim upon which relief may be granted. Hence, I recommend that the Complaint be dismissed.[5]

---

[5] A search of the WestlawNext and Lexis Advance databases reveals that courts that have screened similar or nearly identical complaints filed by the plaintiff in other jurisdictions have dismissed them. *See Emrit v. Oliver*, No.

## C. Discussion

### 1. Counts One and Two (Constitutional Claims)

#### a. Requisites of Equal Protection Claim

I begin with a review of the relevant Maine statutes. The plaintiff asserts that he should have been placed on the ballot as either an independent or a Democratic candidate. *See id*. ¶¶ 69, 79-80. To qualify for placement on the general election ballot in Maine, an independent (non-party-affiliated) candidate seeking to run for the office of United States president must file with the Secretary of State, by August 1 of that election year, a verified, certified petition containing the signatures of at least 4,000 registered Maine voters. *See* 21-A M.R.S.A. §§ 354(1)(B), (2)-(4), (5)(A), (7), (8-A), & (9). To qualify for placement on a political party's primary election ballot, an individual seeking nomination as that party's United States presidential candidate must file with the Secretary of State, by March 15 of that election year, a verified, certified petition containing the signatures of at least 2,000 registered Maine voters. *See id*. §§ 335(2)-(4), (5)(B)(2), & (7)-(9).

The Supreme Court has stated that, "as a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes." *Storer v. Brown*, 415 U.S. 724, 730 (1974). Nonetheless, "[l]imitations upon ballot access may impinge two fundamental constitutional rights: the right of individuals to associate for the advancement of political beliefs, and the right of qualified voters, regardless of their political persuasion, to cast their votes effectively."

---

17cv1024 JCH/GBW, 2018 WL 626254 (D.N.M. Jan. 30, 2018); *Gale,* 2018 WL 618414; *Emrit v. Kobach*, Case No. 17-CV-2593-CM-GLR, 2018 WL 878959 (D. Kan. Jan. 24, 2018) (rec. dec., *aff'd* Feb. 13, 2018); *Emrit v. Sec'y of State of Haw*., CIVIL NO. 17-00504 DKW-RLP, 2018 WL 264851 (D. Haw. Jan. 2, 2018); *Emrit v. Simon*, Case No. 17-CV-4605 (SRN/SER), 2017 U.S. Dist. LEXIS 193755 (D. Minn. Nov. 14, 2017) (rec. dec., *aff'd* Dec. 8, 2017); *Emrit v. Murray*, Case No. 2:17-CV-174-SWS, 2017 U.S. Dist. LEXIS 193944 (D. Wyo. Oct. 31, 2017); *Emrit v. Lawson*, No. 1:17-cv-03624-JMS-TAB, 2017 WL 4699279 (S.D. Ind. Oct. 19, 2017).

*Libertarian Party of Me. v. Diamond*, 992 F.2d 365, 370 (1st Cir. 1993) (citations and internal quotation marks omitted).

In addition, as relevant here, "[w]here ballot access restrictions fall unequally on similarly situated parties or candidates, the Fourteenth Amendment right to equal protection of laws may be threatened as well." *Id.* (citations and internal quotations marks omitted). Yet, "[a] mere demonstration that a state provision distinguishes among groups (such as candidates affiliated with a recognized political party and those not so aligned) is insufficient by itself to establish an equal protection violation." *Barr v. Galvin*, 626 F.3d 99, 109 (1st Cir. 2010). "Rather, a claim of unconstitutionality must be grounded in a showing of substantial discrimination." *Id*.

Under the flexible "sliding scale" approach developed by the Supreme Court, "when the burden imposed by a ballot access regulation is heavy, the provision must be narrowly tailored to promote a compelling state interest[,]" while "[r]easonable, nondiscriminatory restrictions . . . need be justified only by legitimate regulatory interests." *Id*. (citations and internal quotation marks omitted).

While the plaintiff alleges that the defendants "violated [his] equal protection rights by excluding him from the primary and general election ballots in 2016[,]" Complaint ¶ 80, he fails to allege any facts setting forth a plausible claim that Maine's facially neutral petition requirements imposed a burden, or had any disparate impact, on himself or anyone else based on race or disability, or that either defendant harbored discriminatory animus toward him. Indeed, the plaintiff does not even allege that he spoke to either defendant regarding the need to collect the requisite number of signatures to proceed as either an independent or political-party candidate, let alone made any attempt to comply with those requirements.

Simply put, the gravamen of the Complaint, as I understand it, is that, by dint of being both African-American and disabled, the plaintiff should have been, and should be in the future, automatically placed on the ballot as a candidate for United States president in the State of Maine. He is mistaken. *See, e.g., Barr*, 626 F.3d at 109 ("[A] claim of unconstitutionality must be grounded in a showing of substantial discrimination."); *Lawson*, 2017 WL 4699279, at *2 ("Mr. Emrit does *not* challenge the number of petitions or any other specific requirement other than he apparently disagrees with having to submit any petitions because he believes there is no good reason for the requirement. To the contrary, the Constitution confers upon the states broad authority to regulate the conduct of elections.") (citation and internal punctuation omitted).

### b. Requisites of Due Process Claim

The plaintiff also fails to state a colorable claim of deprivation of either his substantive or procedural due process rights. "To state a procedural due process claim, a plaintiff must allege first that [he] has a property interest as defined by state law and, second, that the defendants, acting under color of state law, deprived [him] of that property interest without constitutionally adequate process." *Farris v. Poore*, 841 F. Supp.2d 436, 439 (D. Me. 2012) (citation and internal quotation marks omitted). The plaintiff does not allege that he had a property interest, as defined by state law, in being listed as a presidential candidate on Maine ballots in 2016. Indeed, he does not allege that he took any steps to fulfill the requirements to be listed on a ballot in Maine that year or that either defendant engaged in any specific conduct depriving him of the opportunity to be so listed.

"The Supreme Court has held that substantive due process claims involve only the most egregious official conduct that shocks the conscience." *Id*. at 441 (citation and internal quotation marks omitted). "Even bad faith violations of state law are not necessarily tantamount to

unconstitutional deprivations of due process." *Id*. The plaintiff alleges no specific conduct on the part of either defendant, let alone conduct that shocks the conscience.

### c. Secretary of State: Eleventh Amendment Immunity from Damages

Beyond this, even if the plaintiff had set forth a plausible claim of violation of his constitutional rights, the Eleventh Amendment confers immunity from monetary damages on the Maine Secretary of State, sued in his official capacity. "[A] suit by private parties seeking to impose liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment" regardless of "whether the named defendant is the state itself or, as here, a state official in [his] official capacity." *Davidson v. Howe*, 749 F.3d 21, 27 (1st Cir. 2014) (citation and internal quotation marks omitted). Nothing in the Complaint indicates that, in this case, an exception to sovereign immunity applies. *See id*. at 28 (noting that "Congress may abrogate a state's sovereign immunity through appropriate legislation," or "a State may waive its sovereign immunity by consenting to suit") (citations and internal quotation marks omitted).

### d. Maine Democratic Party: Failure To Show State Action

Finally, the Complaint fails to state a claim that the Maine Democratic Party violated the plaintiff's equal protection and due process rights for the additional reason that it alleges no facts from which one reasonably could conclude that the Maine Democratic Party acted under color of state law. *See Missert v. Trustees of Boston Univ.*, 73 F. Supp.2d 68, 70-73 (D. Mass. 1999) (dismissing plaintiff's claims of due process and equal protection violations against private institution that was not engaged in state action).

Political parties are private parties, and "[p]rivate parties are largely unrestrained by the constitution[.]" *King v. Friends of Kelly Ayotte*, 860 F.Supp.2d 118, 121, 124-25 (D.N.H. 2012) (holding that, for purposes of plaintiff's claim of violation of his First Amendment rights, he failed

to demonstrate that conduct of political defendants, including New Hampshire Republican State Committee, amounted to state action).

A private party, however, "may become a state actor if he assumes a traditional public function when performing the challenged conduct; or if the challenged conduct is coerced or significantly encouraged by the state; or if the state has so far insinuated itself into a position of interdependence with the private party that it was a joint participant in the challenged activity." *Santiago v. Puerto Rico*, 655 F.3d 61, 68-69 (1st Cir. 2011) (citation and internal punctuation omitted). Yet, the plaintiff alleges no facts suggesting that the Maine Democratic Party engaged in any conduct as it pertains to him, let alone action that could in any way be construed as state action. Indeed, the Maine Secretary of State regulates access to primary and general election ballots, not the political parties. *See, e.g.*, 21-A M.R.S.A. §§ 335, 354.

### 2. Count Three (Title VII Claim)

Count Three, asserting violations of Title VII of the Civil Rights Act of 1964, fails to state a claim against either defendant because Title VII prohibits unlawful employment practices. *See* 42 U.S.C. § 2000e-2. The plaintiff does not, and seemingly cannot, allege that either defendant is or was his employer.

### III. Conclusion

For the foregoing reasons, I **GRANT** the plaintiff's application to proceed *in forma pauperis* and recommend that the court **DISMISS** his complaint **WITHOUT PREJUDICE** pursuant to 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim as to which relief can be granted.

### *NOTICE*

***A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum,***

*within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to <u>de</u> <u>novo</u> review by the district court and to appeal the district court's order.*

Dated this 14th day of March, 2018.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge
